IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) ) ) | |
| v. ) | No. 04 CR 986 |
| ) ) | |
| DERRICK MOSLEY, ) ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Derrick Mosley's ("Mosley") motion to dismiss the indictment based upon alleged prosecutorial misconduct. For the reasons stated below, we deny the motion to dismiss.

## BACKGROUND

Mosley is charged in the indictment with two counts of extortion in violation of 18 U.S.C. § 875(d) and two counts of wire fraud in violation of 18 U.S.C. § 1343. In the government's indictment, the government alleges that Mosley attempted to extort money from a victim by threatening to disclose a video tape ("Video") that Mosley, allegedly had in his possession that showed the victim engaging in sexual activities. A magistrate judge conducted a detention hearing in this action on

1

November 18, 2004, which was then continued to November 23, 2004. Mosley claims in the instant motion that his due process rights were violated at the detention hearing on November 18, 2004, because Assistant United States Attorney Virginia Kendall (" Kendall"), who represented the government at the detention hearing, made false statements to the court at the detention hearing. Mosley seeks a dismissal of the indictment in the instant motion to dismiss.

## DISCUSSION

The Seventh Circuit has stated that "dismissal of an indictment for prosecutorial misconduct is warranted only where a substantial right of the defendant has been jeopardized." *U.S. v. Wilson*, 715 F.2d 1164, 1169 (7th Cir. 1983). At the detention hearing on November 18, 2004, Kendall advised the magistrate judge that the government had reviewed a number of video tapes recently seized from Mosley's residence and that one such video tape appeared to be the Video allegedly used in the extortion. (Def. Mot. 2; Ex 4). Kendall indicated to the magistrate judge that she believed the "strength of the evidence" against Mosley had increased and asked that Mosley be detained. (Def. Mot. 2; Ex 4). The magistrate judge ordered that Mosley be detained and Mosley asserts that the magistrate's judge's decision was based upon the allegedly false statement made by Kendall. Mosley claims that Kendall knowingly made the false representation to the magistrate judge in order to "bolster' the government's position and ensure that Mosley would be detained.

(Def.'s Mot. 3-4).

Mosley's allegations of prosecutorial misconduct, as set forth in his motion to dismiss, are completely unsubstantiated and without merit. Kendall did not state for certain at the detention hearing that the government had recovered the Video. Rather, Kendall informed the magistrate judge the following: "we recovered a videotape which does *appear* to be the videotape described by Mr. Mosley. . . ." (Def.'s Ex. p. 4)(emphasis added). Thus, the transcript shows that Kendall made no false statement to the court. To the extent that Kendall was relaying her personal knowledge to the court, Kendall merely indicated her current belief that the video tape appeared to be the Video in question. Mosley claims that Kendall held no such belief and that Kendall knowingly misled the court, but Mosley has presented no evidence to support the notion that Kendall did not state truthfully her belief regarding the video tape in question at the detention hearing. Also, Kendall in using the word "we" in her statement to the court was not only commenting on her own personal belief, but was speaking on behalf of all other law enforcement investigators involved in this action such as the F.B.I. (Def.'s Ex. p. 4). The government has submitted in its response to the instant motion an F.B.I. report dated November 15, 2004, which reflects that Mosley's counsel who filed the instant motion advised the F.B.I. that Mosley had the tape used in the alleged extortion at his residence and wished to turn the tape over to the F.B.I. Mosley's counsel further advised the government that Mosley wanted to be present when the tape was turned

over. (Govt' Ex D). Thus, three days before the November 18, 2004, detention hearing, counsel for Mosley himself made statements to the government that the Video exists. It is thus disingenuous for Mosley to claim that the government's attorney should not have made a statement about the recovery of the Video. Mosley's counsel's statement to the government of the existence of the Video and his promise to turn it over to the government would clearly justify Kendall's statement to the court that it appeared that the Video was recovered and her further statement that the "strength of the evidence" against Mosley had increased. (Def. Mot. 2; Ex 4). Kendall's qualified statement to the court that it appeared that the government recovered the Video was reasonable and supported by the evidence.

Also, whether the Video was or was not recovered by the government is not integral to the government's case against Mosley. In order to show a violation of 18 U.S.C. § 875(d), the government must show that Mosley had an "intent to extort" the money from the victim. 18 U.S.C. § 875(d). The government can attempt to show such an extortion by showing that Mosley told the victim that he had a tape and threatened to disclose the tape. The government does not necessarily need to show that he actually possessed such a tape in order to show that Mosley had an intent to extort money from the victim. Under 18 U.S.C. § 1343 it is a crime to "devise[] or intend[] to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television

4

communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice. . . ." 18 U.S.C. § 1343. Similarly, to the extortion charge, the government need not necessarily show that Mosley actually had the Video in order to show that Mosley devised a scheme to commit fraud upon the victim. Mosley himself admits in his reply that his instant "motion to dismiss has *nothing to do* with the government prosecuting a charge of extortion with or without the videotapes." (Def.'s Mot. 3; Reply 4)(emphasis added).

To rebut Mosley's allegations, the government has submitted copies of statements Mosley made before and immediately after he was arrested that refer to his possession of the Video. Mosley has failed to address or offer any explanation as to the multitude of transcripts and tapes the government has submitted with statements Mosley made before and immediately after he was arrested that refer to his possession of the Video. Mosley has also failed to address a government report submitted that indicates that Mosley's attorney, Mr. Luis M. Galvan ("Attorney Galvan") informed the government, prior to the November 18 and November 23, 2004 detention hearings, that Mosley had the Videotape at his residence and that Mosley wished to turn it over to the F.B.I. (Gov. Ex. D).

In reviewing the totality of the circumstances, it is clear that Kendall's statement to the magistrate judge at the detention hearing was not a false representation. The evidence does not even show that the representation was

5

inaccurate. In making her representations to the magistrate judge, Kendall was relying on the evidence available to her, including the statements of Mosley and Mosley's attorney. Based on the evidence submitted by the parties, we cannot find that the comments made by Kendall at the detention hearing in any manner violated or "jeopardized" Mosley's due process rights." *Wilson*, 715 F.2d at 1169 (7th Cir. 1983). Therefore, we deny Mosley's motion to dismiss.

## CONCLUSION

Based on the foregoing analysis, we deny Mosley's motion to dismiss.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: May 11, 2005